UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 5:09-CR-74 |
| JEROME HOWARD FELDMAN, also known as Michael Adams; also known as Alberto Gomez; also known as Mitch Michaelson, | |
| Petitioner-defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -v- | 5:09-CR-421 |
| JEROME H. FELDMAN, | |
| Petitioner-defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                             OF COUNSEL:

JEROME HOWARD FELDMAN, Pro se
JEROME H. FELDMAN, Pro se
501100842
Broward County Jail
555 S.E. 1st Ave.
Main Jail
Fort Lauderdale, FL 33310

HON. RICHARD S. HARTUNIAN                    CARLA B. FREEDMAN, ESQ.
United States Attorney                                  Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, NY  13261

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Petitioner Jerome Feldman ("petitioner" or "Feldman") brings this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] The United States of America ("the Government") opposes. Following the Government's response to his original motion, petitioner submitted two supplements to his motion as well as two replies objecting to the Government's response, although not permitted.[2] Petitioner's motion was considered on submit.

## II. FACTUAL BACKGROUND

Feldman was a practicing and licensed psychiatrist in New York, New Jersey, and Florida since approximately 1983. He owned and operated the Jerome Feldman Community Mental Health Center at two locations in Florida. Between 1996 and 1999, Feldman was involved in a scheme to fraudulently obtain money from the Medicaid and Medicare programs by means of false and fraudulent pretenses, representations, and promises, through the use of wire communications in interstate and foreign commerce.

---

[1] Petitioner filed an identical § 2255 motion in both underlying criminal cases: Case No. 5:09-CR-74 and Case No. 5:09-CR-421. The motion challenges the sentences he received in both cases. The Government addressed all arguments in one memorandum of law and filed it in both criminal cases. Petitioner then filed a total of four supplements, which were filed in both criminal cases.

[2] In light of petitioner's pro se status, the two supplements to his motion will be considered. To the extent the two replies add to arguments already raised, those arguments have been considered. Any new arguments raised for the first time in the replies will not be considered.

Following investigation into the Medicaid and Medicare schemes, Feldman entered into a plea agreement on August 23, 1999, with the United States Attorney's Office in the Middle District of Florida ("M.D. Fla."). On October 5, 1999, Feldman failed to appear in Florida for an initial appearance, arraignment, and change of plea. An arrest warrant was issued on November 10, 1999. For nearly a decade, federal and state investigators unsuccessfully attempted to locate Feldman, who had fled to the Philippines.

After Feldman left the country, further investigation revealed that between May 2006 and October 2008, Feldman was a part of a scheme involving an online organ transplant website named www.liver4you.org, where he arranged for patients to pay large sums of money through wire transfers to an account he controlled in Dewitt, New York. After payment, Feldman arranged for the patients to travel to the Philippines to receive organ transplants. Feldman caused victims to wire transfer payments to his Chase Bank Account in Dewitt, New York as well as to four other bank accounts which he opened under the names "Michael Adams" and "Alberto Gomez." Feldman conducted this scheme over a two-year period while corresponding with victims over e-mail under various aliases, posing as a medical doctor and a business partner. After the money was transferred and victims traveled to the Philippines, the transplants were not provided, causing victims to lose large sums of money. In some cases the lack of treatment resulted in the victim's death.

The investigation involving the wire transfers in Dewitt, New York led to the filing of a sealed criminal complaint against Feldman on January 6, 2009. A warrant was then issued out of the Northern District of New York ("N.D.N.Y.") for Feldman's arrest. American and Filipino law enforcement worked together to locate Feldman in the Philippines. He was eventually located on February 3, 2009, in Manila, Philippines. On February 11, 2009,

Indictment No. 09-CR-74 was returned by a grand jury in the N.D.N.Y., charging Feldman with five counts of wire fraud in violation of Title 18 of the United States Code, section 1343 (the "Wire Fraud Indictment"). The Wire Fraud Indictment included a forfeiture allegation of a money judgment for all proceeds resulting from the wire fraud, totaling more than $1,000,000.

On March 18, 2009, Feldman was deported from the Philippines to Guam. He appeared the following day in the District Court of Guam and consented to removal to the N.D.N.Y.. He made his initial appearance in the N.D.N.Y. on April 2, 2009. During arraignment, James F. Greenwald, Esq. of the Federal Public Defender's Office was appointed counsel.[3]

On August 6, 2009, the Government filed an Information in the M.D. Fla. charging Feldman with one count of health care fraud, in violation of Title 18 of the United States Code, section 1347 for his involvement in the above mentioned Medicaid and Medicare schemes which took place between 1996 and 1999 (the "Health Care Fraud Information"). Feldman was charged with knowingly and willfully executing and attempting to execute a scheme or artifice to defraud the Medicaid and Medicare programs. That same day, Feldman waived indictment and consented to transfer the M.D. Fla. one count Health Care Fraud Information to the N.D.N.Y. pursuant to Rule 20 of the Federal Rules of Criminal Procedure.

On August 7, 2009, Feldman appeared in the N.D.N.Y. and pleaded guilty to the one count Health Care Fraud Information No. 09-CR-421 and the five count Wire Fraud

---

[3] Attorney Greenwald was admitted to practice in the Northern District of New York in 1979. As of the time of Feldman's guilty pleas, Attorney Greenwald had been an Assistant Federal Public Defender for approximately ten years.

Indictment No. 09-CR-74. On May 27, 2010, Feldman was sentenced to a term of imprisonment of 120 months on the one count Health Care Fraud Information and 188 months on each of the five counts of the Wire Fraud Indictment, with all sentences to run concurrently, for a total term of imprisonment of 188 months.

Feldman filed a notice of appeal with the Second Circuit on June 9, 2010. The Second Circuit affirmed his sentence on August 1, 2011. See United States v. Feldman, 647 F.3d 450 (2d Cir. 2011). Feldman subsequently filed this § 2255 motion on October 24, 2011.

## III. DISCUSSION

Feldman challenges his sentence on the following grounds: (1) he did not receive the effective assistance of counsel guaranteed to all criminal defendants by the Sixth Amendment; (2) his Fifth Amendment protection against double jeopardy was violated; (3) the Health Care Fraud Information violated the statute of limitations; and (4) there was an illegal search and seizure in violation of the Fourth and Sixth Amendments and an illegal extraterritorial arrest in violation of the doctrines of specialty and dual criminality.

### A. Ineffective Assistance of Counsel

Petitioner contends his counsel's assistance was ineffective and affected the plea process due to: (1) failure to cross-examine the Government's witnesses and failure to call expert witnesses; (2) failure to present a defense theory, failure to call alibi and exculpatory witnesses, and failure to investigate exculpatory evidence; (3) failure to bring forth a violation of Brady v. United States, 397 U.S. 742, 90 S. Ct. 1463 (1970); (4) failure to raise the absence of mens rea as a defense; (5) misinterpreting laws; and (6) earlier ineffective assistance affecting the plea process. The Government contends that petitioner has failed to

prove his counsel's assistance was both unreasonable and the "but for" cause of his conviction.

In order to establish that he was deprived of his right to effective assistance of counsel, petitioner must prove that: (1) his attorney's performance was objectively unreasonable, and (2) he was prejudiced from his attorney's sub-standard representation; that is, he must show that a reasonable probability exists that the outcome of the trial would have been different but for his attorney's errors. See Strickland v. Washington, 466 U.S. 668, 690–92, 104 S. Ct. 2052, 2066–67 (1984); see also Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009). In consideration of the first prong, there is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). With respect to the second prong, a "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

While both prongs are equally important, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697, 104 S. Ct. at 2069. As the Supreme Court explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

Id. at 689, 104 S. Ct. at 2065. A fair assessment of counsel's performance requires a court to review counsel's perspective at the time of his representation, and make a strong presumption that counsel's conduct "falls within the wide range of reasonable professional

assistance." Id. In cases involving the United States, the strength of the Government's case must be considered when evaluating ineffective assistance of counsel claims. See United States v. Helgesen, 669 F.2d 69, 71 (2d Cir. 1982).

### 1. **Failure to Cross-Examine Government Witnesses and Call Expert Witnesses**

Feldman contends that his counsel was ineffective because he failed to cross-examine Government witness Dr. C. Ramirez. He argues that if his counsel had cross-examined Dr. C. Ramirez, his testimony would have refuted the Government's arguments by showing that the medical procedures prior to transplant surgery and the activity on the website were normal practices. Feldman further argues that if his counsel had deposed the Philippine doctors who cared for his patients they would have provided evidence of their level of care and medical records to confirm that the medical procedures prior to the transplant surgery were standard procedures. He contends that testimony from his own expert witnesses would have refuted the Government's claims regarding fraud in the donor selection process.

Feldman cannot establish the second prong of Strickland, that is, he cannot show that there is a reasonable probability that the outcome of his case would have been different if his counsel had cross-examined Dr. C. Ramirez or called his own expert witnesses. Instead, the record shows that counsel provided reasonable assistance, considering the strength of the Government's case against him. In light of the overwhelming evidence presented by the Government against Feldman, both testimonial and documentary, it is not reasonably probable that a cross-examination of Dr. C. Ramirez or the testimony of other expert witnesses would have proved the Government's claims to be without merit. Feldman was

thus not prejudiced by a lack of extensive cross-examination of the Government witnesses or presentation of his own expert witnesses.

### 2. Failure to Present a Defense Theory, Call Exculpatory Witnesses, and Investigate Exculpatory Evidence

Petitioner also contends that his counsel was ineffective because he failed to present a defense theory, which included failing to call exculpatory and alibi witnesses, and failing to investigate exculpatory evidence regarding the website, e-mails, and other records containing information about the wire transfer activity. Petitioner alleges that his counsel's defense theory was merely the statement, "This is my favorite judge and I will put a spin on things."

The record shows that counsel carefully investigated and considered all of petitioner's possible defenses and the risks of proceeding to trial versus the benefits of pleading guilty, and determined that a guilty plea was petitioner's best strategy based on the strong case the Government had against him. Petitioner has not proven that counsel's performance was unreasonable or deficient.

### 3. Failure to Bring Forth Brady Violation

Petitioner argues that he received ineffective assistance of counsel because his counsel did not address the prosecutor's Brady violation. According to petitioner, the prosecutor committed a Brady violation by failing to disclose evidence of an alternative suspect whom victims allegedly spoke about. He contends that his counsel's failure to bring forth the prosecutor's error equates to ineffective assistance of counsel and prejudiced the outcome of his sentence.

Feldman has not provided any evidence, other than the reference made in his supplement, that an alternative suspect exists. The record shows that counsel carefully

investigated and considered all of petitioner's possible defenses and determined a guilty plea was his best strategy based on the strength of the Government's case. In light of the overwhelming evidence that the Government had against petitioner, it is not probable that disclosure of an alternative suspect would have lowered the level of culpability of petitioner. Feldman was thus not prejudiced by counsel's failure to bring forth an alleged Brady violation.

### 4. **Failure to Raise Absence of Mens Rea**

Petitioner contends that counsel was ineffective because he failed to raise the absence of mens rea as a plausible defense to both the health care fraud and wire fraud charges. Petitioner argues his counsel should have argued that "to constitute any crime there must first be a vicious will." Morissette v. United States, 342 U.S. 246, 251, 72 S. Ct. 240, 244 (1952) (internal quotations omitted).[4]

Petitioner claims that he did not knowingly and willfully commit Medicaid and Medicare fraud because he followed all of the Medicare requirements as confirmed by an annual audit in 1996 and that Medicare allowed him to continue participating in the program. He claims he never received notification of the suspension of his provider numbers from either program, so he could not have known that he needed to reapply to continue using the programs. He further contends that using the proceeds from Medicaid and Medicare to pay doctors' salaries, taxes, and other benefits was normal hospital practice.

---

[4] While Morissette cites to this principle, the Supreme Court distinguished criminal intent in common law crimes from the application of statutes that impose criminal penalties irrespective of any intent to violate them. Id. at 257, 72 S. Ct. at 246–47.

Petitioner also claims that he did not knowingly commit the wire fraud. He argues that evidence was provided to counsel including the medical records, bank records, and doctors' statements which would have explained that all medical procedures were done in the same manner as they would have been done in the United States and that no wire fraud was committed.

Both the health care fraud and wire fraud were statutory violations pursuant to Title 18 of the United States Code, which require the defendant to knowingly and willfully violate the statute. However, petitioner cannot successfully raise a lack of mens rea argument. During the change of plea hearing, Feldman recited in open court his involvement in both the health care and wire fraud schemes, and admitted on the record to knowingly and willfully carrying out the crimes. See Change of Plea Tr. 23:10–16, 33:8–25, Apr. 30, 2010, Dkt. No. 37–1. Counsel's failure to raise the absence of mens rea was not prejudicial to petitioner because failure to raise a meritless argument does not equate to ineffective assistance of counsel. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), abrogated in part on other grounds by United States v. Sekhar, --- F.3d ----, No. 11-4298, 2012 WL 2382652, at *4 (2d Cir. June 26, 2012). Petitioner's allegation that counsel failed to use the absence of mens rea as a defense does not prove ineffective assistance of counsel.

### 5. Misinterpretation of Laws

Feldman further contends counsel was ineffective because he misunderstood the doctrines of specialty and dual criminality, which impacted the outcome of the case. The doctrine of specialty is a principal of international law requiring that a defendant be tried only for those crimes for which he is extradited. United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003). This doctrine limits a court's personal jurisdiction over a defendant, and is thus

forfeited if not timely raised.  Id. (citing Ford v. United States, 273 U.S. 593, 606, 47 S. Ct. 531, 535 (1927) (holding that defendant's objection to personal jurisdiction was forfeited where defendant did not object before he entered his plea)).  The doctrine of dual criminality requires that prosecution in the requesting nation be for an act that is also criminal in the surrendering nation.  Murphy v. United States, 199 F.3d 599, 602 (2d Cir. 1999).

Feldman does not argue that his counsel did not consider the doctrines, but instead that he applied the wrong laws when determining potential defenses.  Again, Feldman fails to establish that but for counsel's performance, his case would have come out differently based on these alleged misapplications of law.  Feldman cannot now argue the doctrine of speciality was violated, as he has already pleaded guilty to the charges against him and waived any objection to personal jurisdiction.  His arguments in support of a dual criminality violation are also conclusory and without merit.  He has not alleged that the wire fraud for which he was extradited from the Philippines and prosecuted in the United States was not also a crime in the Philippines.

Even if these arguments had merit, Feldman cannot prove that counsel acted unreasonably.  According to the record, counsel investigated and took into consideration these alleged violations before determining that a plea would be the best option for petitioner.  Feldman's allegations that counsel misapplied the law do not render counsel's conduct unreasonable or ineffective.

### 6.  Counsel's Ineffective Performance Affected the Outcome of the Plea Process

Feldman contends that counsel's assistance was ineffective during the change of plea hearing because counsel failed to have the Government provide a written, negotiated plea agreement for less than the 188 months for which he was sentenced.  Feldman claims that

during the proceeding, the prosecutor indicated that the projected advisory range for sentencing was 63–78 months, which was close to the range advocated by defense counsel. Petitioner contends that because his actual sentence was more than the projected advisory range, counsel's performance was ineffective.

During the change of plea proceeding, the Government stated the advisory range was 63–78 months, but further stated that Feldman's counsel had been advised that permission was being sought to move for an upward variance of the sentencing range. See Change of Plea Tr. 38:4–10. Based on the transcript, counsel did not err by failing to request that the 63–78 month projected advisory range be in writing because that range was never promised by the Government, but was instead only used as a basis for consideration together with all other factors. Thus, Feldman has not proved the assistance of counsel was ineffective.

Feldman further contends that the aggregate of counsel's alleged errors constitute ineffective assistance of counsel. When determining whether or not counsel was ineffective, any errors made by counsel must be considered in the aggregate. See, e.g., Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001). The court must determine whether in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 198–99. In light of all circumstances, even if the previously alleged errors by counsel did take place, the plea negotiated by Feldman's counsel for the Wire Fraud Indictment granted him a three-level departure under the United States Sentencing Guidelines for his acceptance of responsibility. See U.S. Sentencing Guidelines Manual § 3 E1.1 (2004). It is likely that by pleading guilty to the Wire Fraud Indictment, petitioner received a sentence at the lower end of the guideline range than he would have received had he proceeded to trial on all five counts. Counsel also negotiated a favorable

plea deal with respect to the Health Care Fraud Information. In exchange for Feldman's plea of guilty, the M.D. Fla. agreed not to press charges for Feldman's other criminal offenses in Florida.

Furthermore, Feldman's allegations that his guilty plea to all five counts in the Wire Fraud Indictment was involuntary because of ineffective assistance of counsel has no merit. This claim contradicts his explicit statements during the plea allocution regarding his understanding of the consequences of his plea, including giving up his right to a trial. In his plea allocution he indicated that he voluntarily chose to plead guilty after consultation with his attorney, and that he was satisfied with his attorney's representation. Change of Plea Tr. 7:6–25, 14:7–11, 18:23–25, 19:25–20:6, 38:17–40:7; see also United States v. Torres, 129 F.3d 710, 715–17 (2d Cir. 1997) ("A motion to withdraw a guilty plea may be denied without a hearing where the defendant's allegations merely contradict the record.") (internal quotations omitted).

Feldman cannot establish he was prejudiced by any alleged errors made by counsel. His guilty pleas were made voluntarily and intelligently in accordance with Federal Rule of Criminal Procedure 11(b)(2), and should not be vacated on the basis that he was not advised of every possible constitutional defense that could be raised. See Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973). Rather, a review of the record shows that the Government presented a substantial amount of evidence demonstrating Feldman's guilt, and his best defense was to plead guilty in exchange for the Government requesting a lesser sentence. As Feldman cannot show that the aggregate of the alleged errors caused him prejudice, he cannot prove that he received ineffective assistance of counsel.

### B. Double Jeopardy Clause

Petitioner's second basis on which to grant his § 2255 motion results from an alleged violation of the Double Jeopardy Clause of the Fifth Amendment. Petitioner claims that the $1.7 million Medicare and the $1.28 million Medicaid fraud charged against him in the M.D. Fla. Case No. 96-CR-459 filed on July 25, 1996, and dismissed on August 8, 1999, was charged for a second time in the N.D.N.Y. in the Health Care Fraud Information No. 09-CR-421, which charged him with health care fraud of $2.9 million.

The Government contends petitioner's claim is meritless as he was never prosecuted for the health care fraud violations in 1999 because he fled the jurisdiction on the date of his scheduled court appearance. Therefore, the 2009 N.D.N.Y. prosecution was the first time any jeopardy could attach to the petitioner's prosecution.

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause affords a defendant protection from: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 498, 104 S. Ct. 2536, 2540 (1984). In a jury trial, jeopardy attaches when a jury is empaneled and sworn; in a non-jury trial, jeopardy attaches when the court begins to hear evidence. Serfass v. United States, 420 U.S. 377, 388, 95 S. Ct. 1055, 1062 (1975).

The protections provided by the Double Jeopardy Clause do not "alter the fundamental principle that an accused must suffer jeopardy before he can suffer double jeopardy." Id. at 393, 95 S. Ct. at 1065. As jeopardy does not attach until a defendant is put

before the trier of fact, the constitutional prohibitions cannot be applied to judicial proceedings where no prosecution occurs. Id. at 389, 95 S. Ct. at 1063 (holding that jeopardy did not attach when the judge dismissed indictment because case was not put to fact finder and court did not make determination of guilt); United States v. Dionisio, 503 F.3d 78, 79 (2d Cir. 2007) (holding that in order for a pre-trial dismissal to trigger the protections of the Double Jeopardy Clause, there must be an adjudication of elements of the offense charged, in a way that reflected a genuine risk of conviction).

Petitioner failed to appear in the M.D. Fla. on October 5, 1999. As a result of his failure to appear, an arrest warrant was issued on November 10, 1999. Petitioner fled the country, and the search for him was unsuccessful. Thus he was not subjected to prosecution for the health care fraud. Because no prosecution took place, and no evidence was presented to a trier of fact, jeopardy did not attach. The health care fraud charges remained pending until he was apprehended in March 2009 in the Philippines. Thus, when he pleaded guilty on August 7, 2009, he was not at risk of double jeopardy as this was the first occasion where he was put at risk of conviction.

### C. Statute of Limitations

Feldman argues that by prosecuting him in the Health Care Fraud Information in 2009, the Government violated the five year statute of limitations for health care fraud because the criminal offenses for which he was being prosecuted occurred between 1996 and 1999. The Government argues that pursuant to Title 18 of the United States Code, section 3290, the statute of limitations does not apply to persons fleeing from justice.

Under Title 18 of the United States Code, section 3282, the statute of limitations for prosecution of any offense is five years. "[N]o person shall be prosecuted, tried, or punished

for any offense . . . unless the indictment is found or the information instituted with five years next after such offense shall have been committed." 18 U.S.C. § 3282(a) (2006). However, "[n]o statute of limitations shall extend to any person fleeing from justice." Id. § 3290.

Feldman argues that § 3290 does not apply to him because he did not flee the country until several years after his scheduled appearance, he was not away continuously, and the Government failed to properly serve *capias*.[5] There is no evidence in the record that shows whether Feldman fled the country immediately or at a later time as he alleges. Furthermore, the language of the statute does not require a defendant to flee from justice immediately or to be continually out of the country. In fact, § 3290 does not require the defendant to have fled the country at all, but instead merely requires the defendant to have fled from justice. Id. Finally, Feldman has not provided evidence of how the Government failed to properly serve *capias*. Accordingly, Feldman's argument is meritless and § 3290 applies.

When Feldman failed to appear in the M.D. Fla. on October 5, 1999, an arrest warrant was issued and as of November 10, 1999, Feldman was a fugitive from justice. See Feldman, 647 F.3d at 454. Thus, pursuant to § 3290, the statute of limitations was tolled from the time Feldman fled the country in 1999 until his arrest and initial appearance in the District Court of Guam on March 19, 2009.

Accordingly, the five year statute of limitations had not yet run when he pleaded guilty to the Health Care Fraud Information on August 7, 2009.

---

[5] *Capias* is "[a]ny of various types of writs that require an officer to take a named defendant into custody. A capias is often issued when a respondent fails to appear or when an obligor has failed to pay child support." Black's Law Dictionary 236 (9th ed. 2009)."

### D. Illegal Search and Seizure, Violation of Doctrine of Specialty and Law of Treaty-Dual Criminality, and Illegal Extraterritorial Arrest

Petitioner's fourth ground for relief alleges that his Fourth and Sixth Amendment rights were violated when the Government conducted an illegal search and seizure subsequent to his arrest in the Philippines.  He also alleges that the Government violated the doctrines of specialty and dual criminality, and conducted an illegal extraterritorial arrest.  The Government contends that there was no illegal search and seizure of petitioner's person, and any constitutional claim regarding search, seizure, and unlawful arrest was waived upon the entry of petitioner's guilty pleas.

The Supreme Court has established that when a defendant has pronounced in open court that he is guilty of the offense for which he is charged, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  Tollet, 411 U.S. at 267, 93 S. Ct. at 1608.  The only attack available to a defendant after pleading guilty is to contest the voluntary and intelligent character of his plea.  Id.  There is no issue regarding whether petitioner's pleas were made voluntarily and intelligently because he pleaded guilty in accordance with Federal Rule of Criminal Procedure 11(b)(2), and expressed a full understanding of the consequences of his guilty pleas, including giving up his right to a trial and his right to present any witnesses or evidence in his defense.

 Accordingly, petitioner waived his right to raise any Fourth or Sixth Amendment violations which allegedly occurred prior to pleading guilty.

## IV. **CONCLUSION**

Petitioner's claim that his right to the effective assistance of counsel was violated is meritless. He has failed to show that his appointed counsel's assistance was ineffective as the record indicates that any alleged errors made by his counsel did not prejudice the outcome of his case. Next, petitioner's claim that the Double Jeopardy Clause was violated is also meritless, as he was only prosecuted once for the health care fraud. Moreover, Feldman's claim that prosecution of the health care fraud violated the statute of limitations is in error as he was a fugitive of justice and the statute of limitations was tolled while he fled from justice. Finally, petitioner is barred from asserting constitutional violations which allegedly occurred prior to pleading guilty.

Accordingly, it is

ORDERED that petitioner's motion to vacate his sentence under 28 U.S.C. § 2255 is DENIED, and a Certificate of Appealability will not be issued in this matter.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 25, 2012
       Utica, New York.